Clarence **NANCE** et al., Plaintiffs,

v.

Sarah **B. JACKSON** et al., Defendants.

Civ. A. No. 3731–N.

United States District Court,
M. D. Alabama, N. D.

Aug. 28, 1972.

464

Frank J. Mizell, Jr., Montgomery, Ala., for plaintiffs.

William J. Baxley, Atty. Gen., and Henry H. Caddell, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants.

Ralph Knowles, Drake, Knowles & Still, Tuscaloosa, Ala., and Howard A. Mandell, Montgomery, Ala., for Alabama Citizens for McGovern, an unincorporated association, Julian McPhillips, individually and as Chairperson of Alabama Citizens for McGovern, et al., who sought leave to intervene.

## ORDER

FRANK M. JOHNSON, Jr., District Judge.

Defendants seek the removal of an action brought against them in the Circuit Court of Montgomery County, Alabama, which defendants claim is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1343(3) and (4) and is removable pursuant to 28 U.S.C. §§ 1441 and 1443.

The action was brought by members of the Boards of Registrars of Madison and Morgan Counties, acting individually and in their collective capacity, and by two individual plaintiffs, Smith and Bell, who claim to be duly qualified and registered voters of the State of Alabama. Named as defendants are the members of the Board of Registrars of Montgomery County, both individually

and in their capacity as members of a class composed of all members of boards of registrars throughout the state, excluding the plaintiff boards. The gist of the complaint is that the boards of registrars within the state are willfully and illegally failing and refusing to follow the criteria prescribed by the Supreme Court of Alabama for ascertaining the bona fides of the residence of student applicants and applicants in the military service. The two individual plaintiffs, Smith and Bell, claim that such free and unrestrained registration of such persons as voters is contrary to Section 17, Title 17, Code of Alabama 1940 (Recomp.1958),[1] and "dilutes and lessens, contrary to law, the value and weight of the individual votes of these two complainants in Statewide elections . . . ."

The plaintiffs move to remand this action to the Montgomery County Circuit Court on grounds that they are asserting rights and duties that are nonfederal, that the substance of the litigation involves the matter of state suffrage and appropriate procedures for registration of Alabama citizens as voters, and that this Court should abstain from disruption of or interference with such litigation until the state courts have authoritatively construed the process by which boards of registrars in the state should ascertain the eligibility of applicants to be registered as voters in the state.

Subsequent to plaintiffs' motion to remand, an unincorporated association, Alabama Citizens for McGovern, its chairman, and various college students, suing in behalf of themselves and others similarly situated, sought to intervene and join as parties the Alabama State Sovereignty Commission and its executive secretary.

Plaintiffs Smith and Bell now move to be stricken as plaintiffs in this suit. The motion will be treated as a Rule 41(a) (2) motion to dismiss the action as to those plaintiffs.

The original complaint, the petition for removal, the motion to remand, the petition to intervene, and the motion for voluntary dismissal raise issues as to (1) the removability of this case, (2) the standing of certain parties plaintiff to sue, (3) the propriety of allowing intervention, and (4) the propriety of granting voluntary dismissal as to plaintiffs Smith and Bell.

## I. REMOVABILITY

Defendants' grounds for removal are two: Defendants claim the action is removable by virtue of 28 U.S.C. § 1441, which governs the removal of actions generally, and by virtue of 28 U.S.C. § 1443, which governs the removal of certain civil rights cases. Removal under the latter provision, it should be noted, "is by defendant for the protection of civil rights," and should be "sharply distinguished from the removal of an action brought by a plaintiff to redress a violation of plaintiff's civil rights." 1A Moore, Federal Practice ¶ 0.165 (italics omitted).

The grounds stated for removal under 28 U.S.C. § 1443 need not be spelled out in any great detail because they are defective in one major respect. Defendants have failed to show that they are denied or cannot enforce a right under, or that the action is brought for an act derived from, or a re-

---

1. The text of Section 17, Title 17, is in pertinent part as follows:

No person shall lose or acquire a residence either by temporary absence from his or her place of residence without the intention of remaining, or by being a student of an institution of learning, . . . or by being absent from his or her place of residence in the civil or military service of the state, or the United States; neither shall any soldier, sailor or marine, in the military or naval service of the United States, acquire a residence by being stationed in this state.

fusal to act inconsistent with, a law providing for the equal rights of citizens, as the latter part of that phrase is defined in Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). In *Rachel* the court held that "the phrase 'any law providing for . . . equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." 384 U.S. at 792, 86 S.Ct. at 1790. Defendants have made no allegation that such a law is involved.

Defendants' second ground for removal is that the individual plaintiffs, Smith and Bell, in their complaint that the action of the Montgomery Board of Registrars and other boards dilutes and lessens the value and weight of their votes, have stated a claim arising under the Constitution and laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1343(3) and (4) and that it is therefore removable under 28 U.S.C. § 1441.

It is true that pursuant to Section 1343 this Court has jurisdiction over any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution or laws of the United States,

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

It is also true that Congress has provided that every person who, under color of state law, deprives a person of any rights secured by the Constitution and laws of the United States shall be liable to the party injured in an action at law, in equity or other proper proceeding. 42 U.S.C. § 1983.

The removability of the instant case, however, depends on whether the plaintiffs' action, or any separate and independent claim or cause of action therein, is actually founded on a claimed deprivation of a right secured by the Constitution or laws of the United States. The answer to be given to that question is influenced by two interrelated legal concepts:

■ First, since removal is keyed to original jurisdiction, and since in an original action alleged to arise under the Constitution or laws of the United States the federal ground must appear in the complaint well pleaded, the federal ground in an action sought to be removed must likewise appear in the complaint well pleaded. 1A Moore, *supra*, ¶ 0.160, at 472.

■ Second, where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and rely solely on the state ground. Crow v. Wyoming Timber Prods. Co., 424 F.2d 93 (10th Cir. 1962). However, the suit may be removed where the real nature of the claim asserted in the complaint is federal, irrespective of whether it is so characterized. Produce Terminal Realty Corp. v. New York, N.H. & H.R. Co., 116 F.Supp. 451, 453 (D.Mass.1953). See Clinton v. Hueston, 308 F.2d 908 (5th Cir. 1962).

The principal determination to be made by this Court with respect to the issue of removability is whether the nature of the claim asserted in the complaint by plaintiffs Smith and Bell is such that they can be said to be free to ignore any lurking federal questions, or whether the real nature of their claim is federal, irrespective of how they might characterize it.

The language of the complaint is obviously patterned after that found in federal reapportionment cases. See, e. g., Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1963) (" . . . the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.")

In *Reynolds* the court held that "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." 377 U.S. at 554, 84 S.Ct. at 1377. The specific holding in *Reynolds* is that "an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." 377 U.S. at 568, 84 S.Ct. at 1385. Both *Reynolds* and other "one man one vote" cases have been said by the Supreme Court to have emphasized that the states are required to insure that each person's vote counts as much, insofar as it is practicable, as any other person's.

> We have applied this principle in congressional elections, state legislative elections, and local elections. The consistent theme of those decisions is that the right to vote in an election is protected by the United States Constitution against dilution or debasement. Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970).

While plaintiffs Smith and Bell did not label their claims as federal, neither did they claim that the right not to have their votes diluted was a product of a particular state law. The applicable provision of the Alabama Constitution, Article 1, Section 33, merely provides that "[t]he privilege of suffrage shall be protected by laws regulating elections . . . ." Neither the state statutes nor the cases interpreting those statutes extend any explicit protection against the dilution of a citizen's vote. The Supreme Court of Alabama itself has said of the one statute referred to by plaintiffs, that while Section 17, Title 17, is included in the chapter concerning electors and voters, it is "but a recognition of established principles concerning domicile." Ex parte Phillips, 275 Ala. 80, 83, 152 So.2d 144, 147 (1963). Moreover, Amendment 91 of the Ala-

bama Constitution and its implementing legislation are, in the Amendment's own words, merely designed to "aid the members of the boards of registrars . . . to judicially determine if applicants to register have the qualifications hereinabove set out . . . . ." The residency requirements so set out have either permanently or preliminarily been found to be a violation of the United States Constitution. See Wall v. Bell, No. 72–357 (N.D.Ala., May 1, 1972) (enforcement of durational state residency requirements of Amendment 207 of the Alabama Constitution and Title 17, Section 12, Code of Alabama 1940 (Recomp.1958) temporarily restrained); Hadnott v. Amos, 320 F.Supp. 107 (M. D.Ala.1970) (county and precinct residency requirements of Amendment 207 of the Alabama Constitution and Title 17, Section 12, held violative of the Fourteenth Amendment of the United States Constitution).

In short, the complaint's own description of the context in which plaintiffs Smith and Bell's claims arise, together with the lack of any controlling state law, confirms what the familiar language of the plaintiffs' complaint suggests—namely, that the real nature of the claim asserted in the complaint is federal, irrespective of whether the plaintiffs might now so characterize it.

Where a complaint in an action originally brought in federal court is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court must entertain the suit; jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which the plaintiff could actually recover. Bell v. Hood, 327 U.S. 678, 681–682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Likewise, a defendant seeking removal under 28 U.S.C. § 1443 does not have to prove preliminarily that he will prevail. New York v. Galamison, 342 F.2d 255, 261–262 (2d Cir.), cert. denied 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965). Consequently, it follows

that removal under Section 1441 does not depend on plaintiff's likelihood of success on the merits. It is enough that he or she has stated a claim over which this Court has jurisdiction.

The only remaining consideration with respect to the removability of the instant case is whether the claims of plaintiffs Smith and Bell are "separate and independent" from those of other plaintiffs. If they are, the entire case is removable under 28 U.S.C. § 1441(c).

Where two or more plaintiffs join in one action to sue one or more defendants, separate and independent claims may or may not be present. 1A Moore, *supra*, ¶ 0.163[4.–5], at 710. If the plaintiffs, for example, are suing to enforce rights jointly held, their claims are not separate. *Id.* If, however, they have joined in the action because of a common question of law or fact, and are seeking to enforce rights that are individual to them, then for removal purposes the action involves separate and independent claims. *Id.*

■ The claims of the members of the Boards of Registrars of Madison and Morgan Counties are separate and independent of those of the individual plaintiffs because the members of the boards do not bring this action as citizens whose votes have been diluted. Rather, they are attempting as members of boards of registrars to compel members of other boards of registrars to take certain action. Whatever other issues their attempt may raise—the issue, for example, of their standing to sue—plaintiff board members have indisputably stated claims which are separate and independent for removal purposes. For this reason, the entire case is removable.

## II. STANDING TO SUE

■ The conclusion that this case is removable does not end the inquiry; it merely permits that inquiry to go forward. Once in federal court, the plaintiffs must satisfy the federal law of standing.

Plaintiffs' complaint raises a substantial question as to the standing of the members of the boards of registrars to sue. The dispositive cases in the federal law of standing are Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). In *Data Processing*, the Supreme Court announced a two-part test for standing: It exists (1) if "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," 397 U.S. at 152, 90 S.Ct. at 829, and (2) if "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830. The first part of the test is generally thought to constitute the constitutional test for standing, while the second superimposes a discretionary limitation on the availability of the judicial forum. The former, by requiring the party seeking relief to allege a personal stake in the outcome of the controversy, assures that "concrete adverseness" exists sufficient to meet the case and controversy requirement of Article III. See Flast v. Cohen, *supra*, 392 U.S. 83, at 99, 88 S. Ct. 1942, citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The second part of the test is designed to assure the litigant's concern with the subject matter of the case.

■ As far as the plaintiff members of boards of registrars are concerned, the complaint is deficient in both respects. The closest plaintiff board members come to alleging an injury in fact is in their seventh allegation, which states that as a result of defendants' allegedly illegal actions in "willfully and illegally failing and refusing to follow the criteria" promulgated by the Alabama Supreme Court pursuant to Amendment 91

of Alabama Constitution and Title 17, Section 32(1) of the Alabama Code, "there . . . exists confusion and uncertainty with respect to the rights, status and legal relations and responsibilities of complainants and respondents, and also as to the status and rights of voter registration applicants appearing before the different Boards of Registrars, all of which results in a lack of uniformity of the law and procedures as applied by the different Boards of Registrars in Alabama with respect to the registration of voter applicants . . ." It does not follow from this allegation, however, that a justiciable controversy exists between plaintiff and defendant board members, for it is not clear that "confusion and uncertainty" is equivalent to injury in fact, or that it gives plaintiff board members a sufficiently personal stake in the outcome. They have given no indication that the action of defendants has injured or threatens to injure them as board members, either economically or otherwise.[2]

Neither is it clear that the right sought to be protected by plaintiff board members—namely, the right to have members of other boards comply with the questionnaires promulgated by the Supreme Court of Alabama—is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question—whether the relevant statute be considered to be the Fourteenth Amendment of the United States Constitution, Title 42, Section 1983 of the United States Code, Amendment 91 of the Alabama Constitution, or Title 17, Section 32(1) of the Code of Alabama. Clearly, the interest of the plaintiff board members does not come within the zone of interests to be protected by the federal constitution and

statute. Moreover, the zone of interest protected or regulated by Amendment 91 and its implementing legislation is that of "aid[ing] the members of the boards of registrars . . . to judicially determine if applicants to register have the qualifications hereinabove set out . . . ."[3] One board's asserted interest in having another board utilize the questionnaire is not within this zone.

### III. INTERVENTION

■ Pursuant to Rule 24, Federal Rules of Civil Procedure, Alabama Citizens for McGovern and others seek, both as a matter of right and as a matter of the Court's discretion, to intervene in this case. They claim a right to intervene because they claim to have, as Rule 24(a) requires, an interest, not adequately represented by existing parties, the protection of which may as a practical matter be impaired or impeded by the disposition of the action. They alternatively request permissive intervention pursuant to Rule 24(b) in that their claim of interest and the main action have questions of law or fact in common and the requested intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

The first requirement for intervention as of right is that the applicant have a "direct, substantial, legally protectable interest in the proceedings." Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.1968). Since applicants are petitioning *inter alia* as citizens registered to vote, or arguably qualified to register to vote, and are claiming that their votes will be diluted unless this Court denies the relief asked by the plaintiffs and grants the relief sought by the intervenors, their interest is no less direct, substantial or legally protectable than that asserted by

---

2. Inasmuch as the allegation of a failure to use the questionnaire promulgated by the Alabama Supreme Court is made by the plaintiffs generally, the individual plaintiffs Smith and Bell can, of course, raise the issue in connection with their claim

that their votes have been diluted since their claim of a dilution of their votes is a sufficient personal stake.

3. See page 468, *supra*.

the individual plaintiffs suing as citizens qualified to vote.

More difficult are the questions whether petitioners' ability to protect that interest will as a practical matter be impeded by disposition of the case and whether their interest is inadequately represented by existing parties. The difficulty with petitioners' claim of inadequate representation is that, to the extent their interests are not adequately represented by existing parties, those interests are not the subject of this lawsuit but are in effect the subject of an entirely different lawsuit.

> Intervention is concerned with something more than standing to sue. It is concerned with protecting an interest which can only be protected through intervention in the current proceeding. Hatton v. County Bd. of Educ., 422 F.2d 457 (6th Cir. 1970).

In view of the ultimate disposition to be made of this case, it cannot be said that petitioners' interests can only be protected in the current proceeding, or even that protection of petitioners' interests will as a practical matter be impaired or impeded by the disposition of this case. Petitioners can adequately protect their interests either by way of a separate lawsuit or by way of intervention in any state court proceeding which might follow.

An alternative ground for denying the petition to intervene is that, by virtue of this Court's disposition, *infra*, of plaintiffs Smith and Bell's motion for voluntary dismissal, there is no justiciable action pending in which to intervene. See Davis v. Jury Commission of Montgomery County, 261 F.Supp. 591, 594 (M.D. Ala.1966).

For the reasons above, and for the additional reason that it would unduly delay or prejudice the speedy conclusion of this litigation as between the original parties, permissive intervention is inappropriate and must be denied.

## IV. VOLUNTARY DISMISSAL

The remaining plaintiffs in this case are the individuals Smith and Bell, who voluntarily seek to be dismissed as plaintiffs. They have no absolute right to dismissal in view of the fact that a petition for intervention tendering a justiciable issue has been filed. See 5 Moore, *supra*, ¶ 41.02[3]. Nevertheless, dismissal may be granted by order of this Court pursuant to Rule 41(a)(2), even though dismissal will defeat removal. *Id.* ¶ 41.07.

The Court's discretion under Rule 41(a)(2) is to be exercised with due regard to the legitimate interests of both the plaintiffs and the defendants. *Id.* ¶ 41.05[1]. It has also been said that the essential question is whether the dismissal of the action will be unduly prejudicial to the defendants. Harvey Aluminum, Inc. v. American Cyanamid Co., 15 F.R.D. 14, 18 (S.D.N.Y. 1953); United States v. E. I. du Pont de Nemours & Co., 13 F.R.D. 490, 496 (N.D.Ill.1953).

Surveying the entire record of this case, and in view of the early stage of the proceedings, this Court is of the opinion that plaintiffs' motion for voluntary dismissal will not prejudice the interests of any party, and will indeed be in the interest of all parties concerned.

Accordingly, it is the order, judgment and decree of this Court that:

1. The motion to remand this cause to the Circuit Court of Montgomery County, Alabama, filed July 25, 1972, be and the same is hereby denied.

2. The complaint as filed by Clarence Nance, Martha W. Smith, and Lyla McMullen as members of the Board of Registrars of Madison County, Alabama, and Ann Bell, Myrtle Cobb, and John Braswell as members of the Board of Registrars of Morgan County, Alabama, be and the same is hereby dismissed for lack of standing of these plaintiffs to maintain this action.

3. The motion for leave to intervene filed August 4, 1972, by the Alabama Citizens for McGovern, Julian McPhillips, Thomas H. Waters, Carolyn Ann Waters, Terry Thomason, Katharina Geissler and Don Bollman, individually and as representatives of certain classes of citizens similarly situated, be and the same is hereby denied.

4. The motion of the plaintiffs Ann Bell and Martha W. Smith, filed August 21, 1972, seeking leave to be dismissed as plaintiffs be and the same is hereby granted.

5. The costs of this proceeding be and they are hereby taxed against the plaintiffs.